FILED
2020 Sep-21  PM 04:00
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **JANE DOE, a minor who sues by and through her father and Next Friend, JOHN DOE,** | ) ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **Case No.: 5:19-cv-1834-LCB** |
| **PHILIP DEWAYNE PERKINS, *et. al.,*** | ) ) ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Jane Doe, through her father and Next Friend, John Doe, filed suit against Defendants Philip Dewayne Perkins and Robby Parker for the alleged harassment she suffered during her freshman year on the James Clemens High School basketball team. (Doc. 1). Doe alleges that Defendant Perkins's actions caused her personal injury and severe emotional distress, injuries she alleges would have been avoided but for Defendant Parker's alleged failures as superintendent. (*Id.*). Before the Court are Defendant Parker's Motion to Dismiss (Doc. 9) and Defendant Perkins's Motion to Dismiss (Doc. 16). Having considered the filings, argument by counsel, and the applicable law, the Court **GRANTS IN PART AND DENIES IN PART** Defendant Parker's Motion to Dismiss (Doc. 9) and **GRANTS** Defendant Perkins's Motion to Dismiss (Doc. 16).

1

## I.      Factual Background

According to the complaint, Plaintiff began her freshman year at James Clemens High School in August of 2017, two months after she had begun training with the girls' junior varsity basketball team under her history teacher and coach, Defendant Perkins. (Doc. 1 at 4). Plaintiff alleges that she was singled out for harassment by Defendant Perkins "both in practice and in the classroom" and subjected on several occasions to "unwanted sexual touching." (*Id.* at 5). More than once, she alleges, Defendant Perkins "touched [her] on the buttocks." (*Id.*). As coach, Defendant Perkins would allegedly practice with the students and, when he did, always choose to cover Plaintiff. (*Id.*). During these practices, Plaintiff alleges that Defendant Perkins would intentionally "use[] his arm to brush up against her breasts." (*Id.*). After one game, Defendant Perkins allegedly called her out into the hallways alone to discuss her plan to quit the team; "he was harder on her," he explained, because "he looked at her differently and saw her as more of a friend than a player." (*Id.* at 6). When Plaintiff turned around to head back to the locker room, Defendant Perkins allegedly "reached out and grabbed [her] butt." (*Id.*).

Plaintiff alleges that as a result of this continual harassment and assault, she experienced severe emotional distress and, in June of 2018, threatened to commit suicide. (*Id.*). Plaintiff was hospitalized, and she told the facility's counselor about

Defendant Perkins's inappropriate behavior. (*Id.*). She had not told anyone about his behavior during the school year. (*Id.* at 6).

The complaint provides that the Madison City Police Department learned of Plaintiff's allegations and proceeded to investigate her claims. (*Id.* at 7). In June of 2018, it's alleged that Detective Adams of the Madison City Police Department spoke to Defendant Robby Parker about the criminal allegations against Defendant Perkins. (*Id.*). After learning of the criminal investigation, Defendant Parker then allegedly told John Doe that the Madison City Schools would conduct its own investigation into Defendant Perkins, and in August 2018 he was placed on administrative leave for the duration of the criminal investigation. (*Id.* at 7–8).

According to the complaint, Plaintiff's parents also researched her former coach's past and found that he previously had warrants for his arrest in 2008 and 2009 for third degree domestic violence. (*Id.*). In July of 2018, Plaintiff withdrew from James Clemens High School and enrolled in Westminster Christian Academy. (*Id.*). In early October, Defendant Parker told Plaintiff's parents that the school's investigation had not found evidence to support their daughter's allegations against Defendant Perkins. (*Id.*). At the end of the month, Defendant Perkins was reinstated to the classroom. (*Id.*).

## II.   LEGAL STANDARDS

### A. 12(b)(6) motion to dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a civil claim may be dismissed for failing "to state a claim upon which relief can be granted." While the complaint need not include "detailed factual allegations" to survive, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), it must offer more than "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, a plaintiff must "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. When reviewing a motion to dismiss, a court must "accept[] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff." *Hunt v. Aimco Properties, L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016). A party's vague recitation "of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

### B. 42 U.S.C. § 1983 and Qualified Immunity

Parties acting under color of law can be held liable for constitutional violations through 42 U.S.C. § 1983. To successfully state a claim under this statute, "a

plaintiff must prove: (1) a violation of a constitutional right; and (2) that the alleged violation was committed by a person acting under the color of state law or a private individual who conspired with state actors." *Melton v. Abston*, 841 F.3d 1207, 1220 (11th Cir. 2016) (citing *Holmes v. Crosby*, 418 F.3d 1256, 1258 (11th Cir. 2005) (per curiam)). A defendant accused of violating a plaintiff's constitutional rights may nevertheless be shielded from liability if he is entitled to qualified immunity for his actions.

Qualified immunity protects government officials performing their discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Hartley v. Parnell*, 193 F.3d 1263, 1268 (11th Cir. 1999) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The party that invokes a qualified immunity defense has the burden of showing he was acting within his discretionary authority. *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002). The burden then shifts to the plaintiff to show that the defendant violated her constitutional rights and the right was clearly established when the violation occurred. *Id*. Law that is clearly established puts the government official "on notice" that his actions are clearly unlawful. *Id*. at 1350. There are three ways that a plaintiff can demonstrate that the law was "clearly established" when the violation happened. *Id*.

First, a plaintiff can point to a "materially similar" case that has already been decided. *Terrell v. Smith*, 668 F.3d 1244, 1255 (11th Cir. 2012) (citing *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005)). If a plaintiff presents a "materially similar" case, the Court determines "whether the factual scenario that the official faced 'is fairly distinguishable from the circumstances facing a government official' in a previous case." *Id.* at 1256 (11th Cir. 2012) (citing *Vinyard*, 311 F.3d at 1352). Plaintiffs can also direct the court to "a broader, clearly established principle [that] should control the novel facts [of the] situation." *Id.* at 1255 (citing *Mercado*, 407 F.3d at 1159). Finally, the alleged unconstitutional action "may 'so obviously violate the constitution that prior case law is unnecessary.'" *Id.* (citing *Lee v. Ferraro*, 284 F.3d 1188, 1199 (11th Cir. 2002)). The Eleventh Circuit has recognized that it is rare that cases arise under the last two methods, known as "obvious clarity" cases. *See Gaines v. Wardynski*, 871 F.3d 1203, 1209 (11th Cir. 2017).

### C. Supervisory liability under 42 U.S.C. § 1983

Supervisors are not responsible for their subordinate's unconstitutional acts "based on respondeat-superior or vicarious-liability principles." *Piazza v. Jefferson Cnty., Ala.*, 923 F.3d 947, 957 (11th Cir. 2019) (citing *Hartley*, 193 F.3d at 1269). Instead, a supervisor can only be held liable under § 1983 "when the supervisor personally participates in the alleged constitutional violation or when there is a

causal connection between actions of the supervising official and the alleged constitutional violation." *Gonzalez v. Reno*, 325 F.3d 1228, 1235 (11th Cir. 2003) (citing *Braddy v. Fla. Dep't of Lab. & Emp. Sec.*, 133 F.3d 797, 802 (11th Cir. 1998)).

A casual connection between a supervisor's behavior and constitutional violation can be alleged three ways. First, "a causal connection can be established 'when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so.'" *Id.* at 1234. Next, a connection can be established if a supervisor's "improper 'custom or policy . . . resulted in deliberate indifference to constitutional rights.'" *Id.* (citing *Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir. 1991)). Finally, a connection can be established if the facts imply that the supervisor "directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Id.* at 1235.

## III.   DISCUSSION

### A. Defendant Parker's Motion to Dismiss (Doc. 9)

Plaintiff asserts three claims against Defendant Parker: two claims under § 1983 and one claim under state law. Under § 1983, Plaintiff alleges that Defendant Parker in his individual capacity violated her Fourteenth Amendment equal-protection and due-process rights by failing to protect her from harassment,

7

intimidation, and assault; failing to thoroughly investigate her claim of sexual assault; reinstating Defendant Perkins; failing "to do anything" in response to her sexual-assault claim. (*Id*. at 10). Under Alabama law, Plaintiff alleges that Defendant Parker negligently, recklessly, and wantonly retained and supervised Defendant Perkins. (*Id*. at 15).

On December 6, 2019, Defendant Parker filed a motion to dismiss all claims against him. (Doc. 9). In moving to dismiss the complaint, Defendant Parker contends that he is entitled to qualified immunity for all claims in Count I—that is, for all Plaintiff's federal-law claims. (Doc. 9 at 4, 15).

### D. Defendant Parker is entitled qualified immunity.

Having considered the facts in the light most favorable to Plaintiff, the Court concludes that Plaintiff has failed to allege violations by Defendant Parker of her equal-protection or due-process rights under the Fourteenth Amendment, and that he is, therefore, entitled to qualified immunity.[1]

### i.    Plaintiff has not shown that Defendant Parker violated her rights under the Equal Protection Clause.

The lawsuit seeks damages for personal injuries and severe emotional distress for sexual harassment and assault that Plaintiff allegedly suffered at the hands of Defendant Perkins. (Doc. 1 at 11—17). The complaint further alleges that Defendant

---

[1] There is no dispute Defendant Parker was acting within his discretionary authority.

Parker, as Defendant Perkins's supervisor, failed to take proper investigative and disciplinary action. For a supervisor to be liable under § 1983 for an equal-protection violation, the complaint must allege either that he personally participated in the alleged violation or that there is a causal connection between his actions and the alleged deprivation. *Doe v. Sch. Bd. of Broward Cnty., Fla.*, 604 F.3d 1248, 1266 (11th Cir. 2010).

Nowhere in the complaint does Plaintiff allege that Parker personally participated in the harassment or assault (Doc. 1). Plaintiff's contention to the contrary—that "participation" includes "having actual notice of the harassment yet doing nothing to correct it" (Doc. 21 at 13)—is a specious one, and it's unsupported by the facts. Even assuming that personal participation could mean notice of harassment without corrective action, the complaint sets forth several actions that Parker took to address the alleged harassment. (Doc. 1 at 7–8). After learning from the Madison City Police of the criminal allegations brought against Defendant Perkins, the complaint states that Parker told John Doe that the school would conduct its own investigation into Defendant Perkins. (*Id.* at 7). It also states that in August of 2018, "Parker placed Perkins on indefinite administrative leave while the Madison City Police completed their investigation." (*Id.* at 7–8). These facts do not support Plaintiff's contention that Defendant Parker personally participated in any constitutional violation.

Nor has Plaintiff plausibly alleged any facts to establish that a causal connection between Parker's actions and the alleged constitutional deprivation. Even if Defendant Parker had indeed taken no action after learning of the allegations against Defendant Perkins, there would be no way for Plaintiff to establish a causal nexus between that alleged wrongdoing and Plaintiff's alleged equal-protection violation. The harms alleged—sexual assault and harassment—all occurred *before* Defendant Parker became aware of it. (*See* Doc. 1 at 7). And because there is no way for her to establish a causal connection between Defendant Parker's actions and her alleged constitutional deprivation, Plaintiff has failed to show that he violated her rights under the Fourteenth Amendment's Equal Protection Clause.[2]

### E. Plaintiff has not shown that Parker violated her right to substantive due process under the Fourteenth Amendment

To state a claim against a government actor for a violation of substantive due process, a plaintiff must allege conduct that "shocks the conscience." *Waddell v. Hendry County Sheriff's Office*, 329 F.3d 1300, 1305 (quoting *Dacosta v.*

---

[2] One allegation in the complaint suggests a previous history of widespread abuse that Defendant Parker should have been on notice of, namely, that in 2008 and 2009, arrest warrants were issued for Defendant Perkins stemming from domestic violence charges. (Doc. 1 at 7). Not only were these charges dropped, but Plaintiff also failed to allege that Defendant Parker *actually* knew of either warrant. Even if he had, Plaintiff does not contend that a history of domestic violence would put Defendant Parker on notice that Defendant Perkins sexually harassed or assaulted other students. Plaintiff also alleges that Defendant Parker's inaction "allow[ed] Perkins full access to other female students" and "set[] up another female student to be assaulted." (Doc. 21 at 11–12). Again, even if this were true, alleging harm to other students would not suffice to show a deprivation of Plaintiff's rights. There is no inference from the allegation that Defendant Parker's inaction caused the harms allegedly suffered by Plaintiff.

*Nwachukwa*, 304 F.3d 1045, 1048 (11th Cir. 2002)). A state official's deliberate indifference may constitute a due process violation but, in the "non-custodial setting," the alleged violation would "require a showing of deliberate indifference to an extremely great risk of serious injury to someone in [the plaintiff's] position." *Id.* (citing *McClendon v. City of Columbia*, 305 F.3d 314, 326 (5th Cir. 2002)).

   In her response to Defendant Parker's motion to dismiss, Plaintiff contends that "Parker's refusal to take any action except to allow Perkins to return to school with full access to Doe and other teenage girls harass again is sufficiently 'reckless' to constitute deliberate indifference and a violation of Doe's right to Substantive Due Process." (Doc. 21 at 18). Even if such a refusal were indeed enough to constitute deliberate indifference that rose to the level of a substantive due process violation, the complaint belies Plaintiff's characterization of Defendant Parker's actions. Defendant Parker, as discussed earlier, told John Doe that the school would conduct its own investigation of Defendant Perkins, and he put Defendant Perkins on administrative leave for the duration of the Madison City Police's criminal investigation. (Doc. 1 at 7–8). Defendant Perkins was reinstated two months later only after the school had completed its own investigation and found insufficient evidence to support Plaintiff's allegations against Defendant Perkins. (*Id.* at 8).

   These allegations fall far short of the conscience-shocking conduct required to establish a substantive due process violation. Indeed, Plaintiff's allegations

suggest that once Parker was apprised of the alleged wrongdoing, he took the appropriate steps of investigating the allegations and the appropriate precaution of temporarily removing Perkins from campus to prevent further abuse. (*See id.* at 7–8).

### F. Plaintiff's federal claims are dismissed, and the Court will not exercise supplemental jurisdiction over the pendant state-law claim.

Because Plaintiff's allegations are insufficient to establish an equal-protection or due-process violation, Parker is entitled to qualified immunity on both of Plaintiff's § 1983 claims. Considering the factors of "judicial economy, convenience, and fairness to litigants," *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966), the Court chooses not to exercise supplemental jurisdiction over the remaining state-law claim. This case has been pending less than a year and substantial discovery has not commenced. *See Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (per curiam) (encouraging district courts to dismiss remaining state claims when federal claims have been dismissed before trial.) Therefore, it is appropriate to decline to exercise jurisdiction over the state law matter and this claim is dismissed without prejudice.

### B. Defendant Perkins's Motion to Dismiss (Doc. 16)

Against Defendant Perkins, Plaintiff asserts one claim under § 1983 and four under state-law. Under § 1983, Plaintiff alleges that Perkins, acting under color of state law, sexually assaulted her in violation of her constitutional right to bodily

integrity. (Doc. 1 at 10–11). Under Alabama law, Plaintiff brings claims of assault, invasion of privacy, negligence, and reckless/wantonness. (*Id*. at 12–15).

On January 6, 2020, Defendant Perkins moved to dismiss all claims against him. (Doc. 16). Like Defendant Parker, Defendant Perkins contends that Plaintiff has failed to establish a right protected by the Constitution, and he asks that the Court decline to exercise supplemental jurisdiction over the remaining state-law claims. (Doc. 16 at 1, 5).

### 1. Substantive Due Process Claim

Plaintiff has failed to establish that Defendant Perkins violated a constitutionally protected right. In her response, Plaintiff contends that Defendant Perkins has violated her right to bodily integrity, a right she argues flows from a liberty interested vested in students by the Fourteenth Amendment. (Doc. 20 at 12). Plaintiff, however, cites no controlling authority for this proposition, relying instead on non-binding decisions from other courts outside this district. (*Id.*) Some courts have acknowledged a constitutionally protected liberty interest in a person's bodily integrity, and these courts have typically recognized that the protection derives from the "substantive component of the Due Process Clause of the Fourteenth Amendment." *Moore v. Chilton Cnty. Bd. of Educ.*, 936 F. Supp. 2d 1300, 1309 (M.D. Ala. 2013); *see also Doe v. Univ. of Ala. in Huntsville,* 177 F. Supp. 3d 1380,

1397 (N.D. Ala. 2016); *Johnson v. Cannon*, 947 F. Supp. 1567, 1572 (M.D. Fla. 1996).

In the Eleventh Circuit, a plaintiff attempting to hold a government actor liable for violations of his substantive due process rights must show the actions "can be characterized as arbitrary or conscience-shocking in a constitutional sense." *Davis v. Carter*, 555 F.3d 979, 982 (11th Cir. 2009). Only conduct that lies "at the ends of the tort law's spectrum of culpability" will rise to the level of a substantive due process violation. *Id.* (citing *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998)); *see also Maddox v. Stephens*, 727 F.3d 1109, 1119 (11th Cir. 2013) ("[O]nly the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'") Indeed, the Fourteenth Amendment "is not a font of tort law to be superimposed upon whatever systems may already administered by the States," *Paul v. Davis*, 424 U.S. 693, 701 (1976), and so a plaintiff alleging a violation of substantive due process by a government actor "face[s] a high bar" of showing that the official's behavior was arbitrary or conscience-shocking. *Maddox*, 727 F.3d at 1119 (citing *Waddell v. Hendry Cnty. Sheriff's* Office, 329 F.3d 1300, 1305 (11th Cir. 2003)).

Two cases illustrate the high bar that a plaintiff must meet to show a violation of substantive due process. In *DaCosta v. Nwachukwa*, 304 F.3d 1045 (11th Cir. 2002), the Eleventh Circuit held that a professor's violent and malicious behavior

toward the plaintiff, a student, did not rise to the level of a substantive due process violation. There, the plaintiff and professor had had a disagreement culminating in the professor slamming the door in the plaintiff's face. *Id*. at 1047. As the plaintiff attempted to protect her face from the door, the glass shattered in the door's window, and her arm got stuck in the pane. *Id*. The professor then "violently swung" the door back and forth to knock her from the door and then shoved her face. *Id*. The professor was arrested for battery, but the Court found that the student's due process rights were not violated. *Id*. The Court noted that while the Professor's conduct was malicious, his behavior was tortious and actionable under state law. It did not rise to the level of a due process violation. *Id*. at 1048–49. The conduct in *Neal ex. rel. Neal v. Fulton Cty. Bd. of Educ*., 229 F.3d 1069 (11th Cir. 2000), by contrast, *did* rise to the level of violation of substantive due process. In *Neal*, a coach reprimanded a high-school student by striking him in the face with a weight lock hard enough that he knocked the student's eye out of its socket. *Id*. Although neither case involved allegations of sexual harassment or sexual assault, together they illustrate the level of egregious behavior a plaintiff must allege to show "arbitrary and conscience-shocking" conduct.

## 2. Plaintiff has not plausibly alleged a violation of her Fourteenth Amendment substantive due process rights.

Construing the facts in the light most favorable to Plaintiff, the Court concludes that Defendant Perkins's behavior is neither arbitrary nor conscience-

shocking. Plaintiff alleged that Defendant Perkins sexually harassed her and grabbed her butt and breasts inappropriately. (Doc. 1 at 4–5). Considering the nature of Defendant Perkins's behavior and the high bar established by Eleventh Circuit precedent, *see, e.g.*, *DaCosta*, 304 F.3d 1045 (11th Cir. 2002), the conduct alleged is not "at the ends of the tort law's spectrum of culpability." *Davis*, 555 F.3d at 982; *see also Nix v. Franklin Cty. Sch. Dist.*, 311 F.3d 1373, 1379 (11th Cir. 2002) ("Substantive due process is a doctrine that has been kept under tight reins, reserved for extraordinary circumstances.") While Plaintiff's allegations may well suffice to support her state-law claims, they do not rise to the level of a violation of substantive due process. Accordingly, Plaintiff has failed to state for a claim under § 1983.

The district court cases that Plaintiff cites in support of her position, *Hackett v. Fulton County School District*, 238 F. Supp. 2d. 1330 (N.D. Ga. 2002) and *Thomas v. City of Clanton*, 285 F. Supp. 2d 1275, 1278 (M.D. Ala. 2003), are distinguishable. Though both cases involved allegations of sexual misconduct, the alleged malfeasance in those cases was far more heinous—i.e., conscience-shocking—than that alleged by Plaintiff. In *Hackett*, the plaintiff's teacher staged an elaborate ruse that students had to come over to his house to compete for a non-existent scholarship and perform a series of experiments. 238 F. Supp. 2d. at 1337. During one of these experiments, the student was instructed to put on a blindfold, take off his clothes, and discern whether a male or female doctor was touching him. *Id*. The plaintiff's

teacher was performing the "experiment" and inappropriately touched the student's body, including his genitals. *Id*. at 1341.

Similarly, in *Thomas*, after the plaintiff was arrested, the arresting officer instructed him to take off his clothes, bend over, and grab his ankles while he strip-searched him. 285 F. Supp. 2d at 1278. Later, the officer took the plaintiff—a minor—to his home and offered him alcoholic drinks. *Id*. He then asked him if he had ever performed oral sex on a man. *Id*. at 1279.

Here, Plaintiff has alleged that Perkins "intentionally" brushed up against her breasts while guarding her in basketball practice and, on one occasion, "grabbed [her] butt." (Doc. 1 at 5–6). Though this conduct appears serious enough to support a state-law tort, the allegations do not shock the conscience as they did in *Hackett* and *Thomas*.

### 3. Because Plaintiff's federal claims are dismissed, the Court will not exercise supplemental jurisdiction over the state law claims.

Plaintiff's only remaining allegations are state law claims. (Doc. 1 at 12–15). For the same reasons that the Court declines to exercise supplemental jurisdiction over Plaintiff's state-law claims against Defendant Parker, the Court declines to exercise supplemental jurisdiction over the remaining claims against Perkins.

## IV.  CONCLUSION

Accordingly, or the reasons stated above, Defendant Parker's Motion to Dismiss (Doc. 9) is **GRANTED IN PART AND DENIED IN PART**. All claims

against Defendant Parker in Count I are **DISMISSED WITH PREJUDICE**, and Count VI is **DISMISSED WITHOUT PREJUDICE**.

Defendant Perkins's Motion to Dismiss (Doc. 16) is **GRANTED**. All claims against Defendant Perkins in Count I are **DISMISSED WITH PREJUDICE**, and all remaining claims against Defendant Perkins are **DISMISSED WITHOUT PRJEUDICE**.

**DONE** and **ORDERED** this September 21, 2020.

_____
**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE